# CARROLL,

## JANUARY TERM, A. D. 1857.

---

## Cook *v.* Gilman.

*If one of the parties to a contract seeks to rescind it on the ground of fraud; he must, before he brings his suit, and within a reasonable time after he discovers the fraud, restore, or offer to restore what he received under the contract.*

The plaintiff and defendant made a bargain, by which the plaintiff gave to the defendant a harness for the promissory note of a third person, payable to the defendant, or order, and by him indorsed without recourse. The plaintiff brought assumpsit to recover the value of the harness, or the money received for it on a sale by the defendant; alleging that he had been induced to make the bargain by fraudulent representations of the defendant as to the value of the note. — *Held,* that the plaintiff could not recover without showing that before he brought his suit, and within a reasonable time after he discovered the fraud, he returned, or offered to return the note to the defendant.

*Held,* also, that to excuse the plaintiff from returning or offering to return the note, evidence could not be received to show that the maker of the note was insolvent, and the note on that account of no value.

Assumpsit. The writ was dated October 4, 1852. The declaration contained two counts, one on an account annexed, consisting of a single item of $18.18, for " one single harness," charged as sold by the plaintiff to the defendant, March 28, 1852 ; the other for $20.00, money had and received. In his specification the plaintiff stated his claim to be for the value of a harness which he sold and delivered to the defendant on the twenty-seventh of March, 1852, and in payment for which the defendant on that day transferred to him the note of John Whit-

ing, jr., for $18.00, dated February 1, 1852, payable origi-
nally to the defendant, or order, and by him indorsed "not
holden," which harness the defendant subsequently sold, so that
he could not return, or the plaintiff obtain it. The plaintiff, de-
fendant and Whiting resided in the same neighborhood.

The plaintiff claimed to recover on the ground that the note
of Whiting, when transferred to him, was worthless; that this
was known at the time to the defendant, but unknown to the
plaintiff; that the defendant then represented to the plaintiff
that the note was good, when he, the defendant, knew it was not
good, but worthless, and that under the circumstances the sale
of the note to the plaintiff was a fraud on him.

Upon trial the plaintiff produced the note of Whiting, and
offered evidence to prove that it had been transferred to him by
the defendant on the twenty-seventh of March, 1852, in pay-
ment, in whole or in part, for a horse harness; that it was part
of the original bargain that the note should be given for the
harness; that the same afternoon, before the trade was made
and the note transferred, the defendant had been informed that
Whiting had failed, and that his property had been attached for
his debts; that Whiting, when the note was transferred, was in
fact insolvent, and that the note could not be collected of him;
that the defendant, at the time of the trade, represented the
note to be good, and Whiting abundantly able to pay it.

The plaintiff likewise introduced evidence that about four
weeks after the twenty-seventh of March, 1852, he called on the
defendant with Whiting's note, got a witness to read it in the
presence and hearing of the defendant, and then asked him if
he would pay the money for it, or secure him to that amount,
and the defendant replied that he would not pay him the money,
but would trade a horse for the note.

The plaintiff offered no evidence that he had ever called on
Whiting to pay the note, or ever offered to return the note to
the defendant, or ever demanded of the defendant the harness,
or pay for it.

The plaintiff having closed his evidence, the defendant moved

for a nonsuit, and the motion was granted, to which the plaintiff excepted.

*Hall*, for the plaintiff.

The count for goods sold and delivered may be maintained for goods obtained by fraud. Oliver's Notes; title, Assumpsit, p. 140, 3d edition. Assumpsit lies to recover money obtained by imposition or fraud, or where the contract has been rescinded. *Tower* v. *Barret*, 1 T. R. 133. If the bill or note was of no value when given in payment, the creditor may consider it as a nullity, and commence an action for his debt immediately. *Stedman* v. *Gooch*, 1 Esp. 3. *Indebitatus assumpsit* may be maintained for the value of goods obtained by fraud, waiving the tort. *Hill* v. *Prescott*, 3 Taunton 274.

The plaintiff may recover, notwithstanding a worthless note may have been given in payment. *Farr* v. *Price*, 1 East 55. The assignee of a note, assigned without recourse, may maintain assumpsit for money paid to the assignor, if the debtor fraudulently misrepresented the ability of the maker to pay. *Harton* v. *Scales*, Minor 166.

If the creditor for goods sold and delivered receives a chose in action as collateral security, and payment has not been obtained from it, he may recover in assumpsit for the goods. *Lucas* v. *Jenness*, 10 S. & R. 307. Where the purchaser of goods transfers to the seller the note of a third person, and guarantees the payment thereof, if not paid when due, he may recover in assumpsit for the goods. *Butler* v. *Knight*, 8 Wendell 535.

In case of sale on credit, if the security agreed upon by the parties turns out to be worthless, and different from the representations of the buyer, or if there be other fraud on the part of the buyer, which avoids the special contract, an action lies immediately for the price of the goods. *Bank* v. *Gore*, 15 Mass. 79; *Wilson* v. *Foree*, 6 Johns. 110; *Pope* v. *Nance*, 1 Stewart 354; *Price* v. *Drake*, 15 Johns. 475.

In *Hill* v. *Davis*, 3 N. H. 384, *Richardson*, C. J., observed, " It has been decided that *indebitatus assumpsit* will lie for

goods which the defendant by fraud procured the plaintiff to sell to an insolvent person, and which the defendant had gotten into his own possession," and cited *Hill* v. *Prescott*, 3 Taunton 274.

*S. Emerson* and *J. Bell*, for the defendant.

PERLEY, C. J. The bargain between these parties, as stated in the case, was in substance an exchange of the harness for the note of Whiting, with perhaps some boot paid in addition to the note. It was not a sale of the harness for eighteen dollars, or any other sum in money, and a transfer of the note to pay or secure the price. It was part of the original contract of sale or exchange that the note should be taken as payment, or towards payment, for the harness. There is nothing in the case tending to show that the parties undertook to fix any definite price as the real or agreed value of the harness. The note was not received in payment of a debt, or as collateral security for a debt; for no debt existed before the bargain, or was created by it. The note was given for the harness, and the harness for the note. The plaintiff, according to that bargain, never had any claim on the defendant for eighteen dollars in money, nor for any other sum.

The misrepresentation proved, or offered to be proved by the plaintiff, was such a fraud on him as would entitle him to legal redress, and the law allowed him his choice of two different remedies; he might affirm the contract and sue the defendant for the fraud; in that case the contract would remain in force; the plaintiff would keep the note of Whiting, and leave the harness with the defendant, and he would recover whatever amount of damage he had suffered from the fraudulent misrepresentation. But he was not confined to this course; he might say that by the fraud of the defendant he was induced to make the contract, and therefore was not bound to stand by it, and might rescind and set it aside. In this latter case, the contract being vacated, the parties would be placed in *statu quo*, and each of them remitted to the rights which he had before the contract was made.

The plaintiff would have his harness again, and the note of Whiting, with any money that may have been given with it, would be returned to the defendant.

In order to claim a return of the harness, the plaintiff would be required to restore, or offer to restore, the note which he had received for it. His only claim to the note was under the bargain, and that would be set aside and vacated, if he chose to claim the restoration of the harness. This general rule, that the party who would recover back, on the ground of fraud, what he had parted with under a contract, must seasonably, and before he brings his suit, return, or offer to return, whatever he has received under the contract, is extremely well established on authority, and may be regarded as fundamental and elementary. *Kimball* v. *Cunningham,* 4 Mass. 502 ; *Conner* v. *Henderson,* 15 Mass. 319 ; *Miner* v. *Bradley,* 22 Pick. 457 ; *Thayer* v. *Turner,* 8 Met. 552 ; *Norton* v. *Young,* 3 Greenl. 30 ; *Ketletas* v. *Fleet,* 7 Johns. 324 ; *Voorhees* v. *Earl,* 2 Hill 288 ; *Wasson* v. *Bovet,* 1 Denio 69 ; *Stewart* v. *Doherty,* 3 Dana 479 ; *Towers* v. *Barret,* 1 T. R. 136 ; *Hunt* v. *East,* 5 East 452 ; *Campbell* v. *Fleming,* 1 Ad. & Ellis 40 ; *Shepherd* v. *Temple,* 3 N. H. 457 ; *Stevens* v. *Lyford,* 7 N. H. 364 ; *Bank* v. *Gregg,* 14 N. H. 338 ; *Evans* v. *Gale,* 1 Foster 240 ; *Webb* v. *Stone,* 4 Foster 288 ; *Allen* v. *Ford,* 19 Pick. 217.

If the defendant had given his own note for the price of the harness, and the plaintiff had sued for the harness on the ground that he had been induced to part with it by fraud, to maintain the action it would not be necessary to return or tender the note. If the note were produced on trial, it would be sufficient ; for the defendant's own note would be no more than his promise, and when that was produced on trial it would appear that he could have suffered no injury from the neglect to return it ; in other words, the parties would then be placed completely in *statu quo.* *Thurston* v. *Blanchard,* 22 Pick. 18. It would be a different case, if the note of a third person had been taken for an existing debt ; but even this last case would not be that which we are now considering ; for here the whole transaction was an entire

contract; there was no agreement to give any thing but the note for the harness; there was no arrangement to take the note as evidence of a debt, or as security for a debt, or in payment of a debt. The note was given and exchanged for the harness; and as to the rights of the parties to this suit, it stands precisely as if a horse or any other commodity had been exchanged for the harness.

In the present case there was no return of the note, nor offer to return it. The plaintiff demanded of the defendant the money which Whiting owed on the note, but the defendant never owed that sum to the plaintiff; he did not receive that sum of him, and the harness was not sold for that sum, but exchanged for the note. The plaintiff did nothing which amounted to an offer to return the note and take back the harness. He claimed the money due on the note, retained the note, and still retains it. Nothing was done before the suit was brought which indicated an intention to return the note and take back the harness, and so rescind the contract by placing the parties where they were before the bargain was made. The plaintiff did not, therefore, seasonably return or offer to return the note, as he was bound to do if he would claim the harness again, or the money that the defendant may have received for it.

But the plaintiff stated, as part of his case, that the note of Whiting was worthless, and introduced evidence on trial tending to show that Whiting was without property, and that the note could not be collected of him. When goods are sold with warranty, and turn out to be of no value, the maker of a note given for the price may resist payment, upon the ground that the note was without consideration, and is not required to show that the worthless goods were returned. *Shepherd* v. *Temple*, 3 N. H. 455; and a party, to rescind a contract, is not required to return a note which is forged, or void for want of a stamp.

But when the valid note of a third person 'has been received under the contract, and the party who has received it would rescind the contract, he can not excuse the omission to return the note, by an offer to prove before the jury that the maker

was insolvent, and the note on that account of no value. The case of *Evans* v. *Gale*, 1 Foster 240, is an authority to the point that where a party has possession of a promissory note, which he ought to return in order to maintain an action, he can not excuse the neglect to return it by proving to the jury that the note was worthless. In that case the court say, " The exact value of the note it is not material to ascertain; it may be of some value against Kimball" (the maker,) " or against some person who has held it. At any rate, whether of much or little value, it is the property of the defendant on the plaintiff's view of the case; there was no return of the note, or offer to return it, in order to place the defendant in as good a condition as he was before." On an earlier trial of *Evans* v. *Gale*, the defendant was allowed to introduce evidence that the maker of the note in that case was insolvent, and the note on that account worthless; and the jury found the fact to be so, and returned a verdict for the defendant; but on a case sent to the Superior Court, and not yet reported, the verdict was set aside, and the evidence held to be inadmissible. In that action, the plaintiff was finally nonsuited, because he did not return the note, though he offered to prove, and once in fact proved to the satisfaction of the jury, that the maker of the note was insolvent, and the note on that account worthless.

And this decision is in accordance with the rule held in the analogous case, where the maker of a promissory note is insolvent or bankrupt, and the holder sues an indorser; the plaintiff is not excused from proving demand and notice by the bankruptcy or insolvency of the maker. Bailey on Bills 196 ; Story on Promissory Notes, secs. 203, 204.

*Judgment on the nonsuit.*